UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIA RASMUSSEN, *et al.*,

        Plaintiffs,

    v.

SKAGIT COUNTY, *et al.*,

        Defendants.

CASE NO. C05-245C

ORDER

This matter comes before the Court on Defendants Howard Leibrand, M.D.'s and Marilyn Leibrand's Motion for Summary Judgment (Dkt. No. 62), Plaintiff's Opposition thereto (Dkt. No. 74), and Defendants' Reply (Dkt. No. 76).  The Court has considered all of the papers submitted regarding this motion and determined that oral argument is not necessary.  The Court hereby GRANTS in part and DENIES in part the motion and rules as follows.

I.       **BACKGROUND AND FACTS**

       This case involves claims against multiple defendants arising out of the death of 35-year-old Antoinette Mersereau following her incarceration in the Skagit County Jail from October 22, 2003 to November 5, 2003.  Between October 26, 2003 and November 4, 2003, Ms. Mersereau made multiple requests for medical attention for various reasons, including trouble sleeping, cough, and respiratory

ORDER – 1

1   symptoms.  Her condition worsened, and, after being transported to the Skagit Valley Hospital

2   Emergency Room on November 5, 2003, she died of Staphylococcus aureus sepsis due to

3   Staphylococcus aureus pneumonia.

4        Defendant Dr. Howard Leibrand, M.D. is the Skagit Valley Health Officer and he has been a jail

5   physician since 1991.  He provided medical care to Ms. Mersereau in the days before her death.  Plaintiffs

6   allege that Dr. Leibrand provided substandard medical care to Ms. Mersereau amounting to medical

7   malpractice in violation of Washington state law.  Plaintiffs also allege that Dr. Leibrand denied necessary

8   medical care in violation of Ms. Mersereau's federal constitutional rights, as actionable under 42 U.S.C. §

9   1983.  Dr. Leibrand and his wife now move for summary dismissal of all claims involving Dr. Leibrand's

10  provision of medical treatment to Ms. Mersereau.

11       Before her death, Ms. Mersereau was participating in "drug court" in lieu of entering a plea on a

12  June 2002 information charging her with residential burglary and theft of a firearm.  (Defs.' Mot. Ex. A.)

13  After a urinary analysis came back positive for drugs, Ms. Mersereau was committed to the Skagit

14  County Jail on October 22, 2003 for two weeks until her next drug court date, scheduled for November

15  5, 2003.  (*Id.* Exs. A, B, C.)  She died on the day she was supposed to be released from jail.

16       According to Defendants, the procedure for obtaining medical care at the Skagit County Jail

17  involves "clinics" and "sick call" requests filled out by inmates.  As to the clinics, Dr. Leibrand saw

18  inmates at the Skagit County Jail one day per week during the time at issue in this lawsuit.  Clinics were

19  held two additional days per week, at which time Advanced Registered Nurse Practitioner ("ARNP")

20  Cathy Smith saw patients.  Dr. Leibrand also held telephone consultations with ARNP Smith and other

21  nurse practitioners as needed.  Inmates could fill out sick call requests any time.  These forms would be

22  turned in to jail staff, who would then review the medical request or complaint and determine whether the

23  inmate (1) required no medical attention, (2) needed to be seen in the next scheduled clinic, or (3) needed

24  more immediate medical attention.  Dr. Leibrand would have been alerted to a medical need if a jail staff

25  member contacted him directly, if ARNP Smith contacted him directly, or he saw the inmate in the clinic.

26  ORDER – 2

1   Ms. Mersereau utilized these procedures multiple times during her incarceration.  On October 26,

2   2003, she filled out a sick call form requesting Trazadone to help her sleep.  (Defs.' Mot. Ex. D.)  Dr.

3   Leibrand approved this request on October 27, 2003.  (*Id.*)  On October 30, 2003, Ms. Mersereau filled

4   out a sick call form stating "I am sick[.]  I need relief from my cough and stuffy nose[.]  Could I please

5   get medicine for this?"  (*Id.* Ex. E.)  ARNP Smith prescribed Sudafed and cough syrup on October 31,

6   2003 and apparently instructed Ms. Mersereau to come to the clinic if she saw no improvement.  (*Id.*)

7   On October 30, 2003, Ms. Mersereau had filled out another sick call request, stating that "My Albuterol[1]

8   inhaler is almost empty[.]  Can this be refilled?  Please[.]"  (*Id.* Ex. F.)  ARNP Smith approved this

9   request as well on October 31, 2003.  (*Id.* Ex. H.)  On October 31, 2003, Ms. Mersereau filled out

10   another sick call request: "I am very ill!  I am stuffy, SORE throat, cough, headache and my ears hurt[.]

11   Please could I get some kind of cold medicine.  I have never been sick like this in jail before.  I have

12   medical and my jail fee's [*sic*] are paid, I can afford medicine[.]  Please help me!"  (*Id.* Ex. G.)  No direct

13   response to this request is noted anywhere in the record.

14   Ms. Mersereau again filled out a sick call request on November 2, 2003,[2] stating:

15   Mr. Jones,[3] I am truly sorry to bother you again but I started coughing up blood.  I have
     kept the towel to show in case I am not believed.  I am very scared now.  I don't think this
16   can be very good.  Can you find out if this is from the new meds or if something else is
     wrong?  It is very painful.  I do appreciate all of your help.
17

18   (*Id.* Ex. I.)  Ms. Mersereau filled out an additional (undated) request apparently during this same time

19   period.  This request is more detailed, stating:

20   Please help me.  I've been sick for days and now I can't breath[e.]  I need to go to the
     hospital for a breathing treatment and medicine.
21   I am not making this up.  I have asthma anyway but now I fear I have a bronchial infection

22   _____

23   [1]  Ms. Mersereau was asthmatic.

24   [2]  The parties agree that, although this request is dated "10-2," it actually was filled out on
     November 2, 2003.

25   [3]  "Mr. Jones" evidently refers to Corrections Deputy David Jones.

26   ORDER – 3

or getting pne[u]monia.  I put in a kite [sick call request] for 3 days straight and the doctor wouldn't see me.  I <u>CAN'T</u> <u>BREATH[E]</u>.

HELP me Please.

I have medical insurance.  I can pay my doctor bill.

(*Id.* Ex. J.)  Jail staff arranged for Ms. Mersereau to see Dr. Leibrand in the clinic on November 3, 2003. At that visit, Ms. Mersereau apparently reported that she had a productive cough that produced greenish sputum, that she thought her asthma was worsening, and that her Albuterol inhaler was not helping.  Dr. Leibrand's notes reflect his observations that Ms. Mersereau's throat was hoarse without strider and appeared red without exudate.  He found scattered wheezes without focal changes in her lungs.  A strep culture came back negative.  (*Id.* Ex. K.)

As Plaintiffs point out, Dr. Leibrand did not make any notes that reflect that he took Ms. Mersereau's temperature, respiratory rate, or vital signs at the November 3, 2003 visit.  Nor did he record any history related to her November 2, 2003 complaint of coughing up blood.  Defendants assert that Dr. Leibrand did discuss Ms. Mersereau's coughing up blood at the visit (Defs.' Reply 10), referring to pages of Dr. Leibrand's deposition that are "attached to Defendants' Motion."  No excerpts of Dr. Leibrand's deposition are attached to Defendants' Motion or Reply, however.  The only portions of Dr. Leibrand's deposition before the Court are the excerpts submitted by Plaintiffs.  (*See* Pls.' Opp'n Ex. F.) Those excerpts indicate that Dr. Leibrand was aware of Ms. Mersereau coughing up blood, which he associated with bronchitis.  (*Id.*)  Plaintiffs claim that Dr. Leibrand should have measured Ms. Mersereau's blood oxygen saturization level or perform a peak flow test.  Dr. Leibrand did not perform such tests, but argues that these tests were not needed because Ms. Mersereau was not in respiratory distress when he saw her.

Dr. Leibrand's diagnosis on November 3, 2003 was that Ms. Mersereau had acute exacerbation of asthma secondary to bronchitis.  He prescribed Prednisone for asthma, continuation of Albuterol use, Zithromax (antibiotic), and cough medication.  (Defs.' Mot. Ex. K.)

ORDER – 4

1    The following day, November 4, 2003,[4] Ms. Mersereau filled out another sick call request,

2   stating: "Mr. Jones I have been coughing up blood for about 14 hours[.]  The blood's getting worse[.]  I

3   need help[.]  Please come see me!"  (*Id.* Ex. L.)  Corrections Deputy David Jones called Dr. Leibrand to

4   relay this request and alert him of Ms. Mersereau's worsening condition.  (Pls.' Opp'n Exs. E, F.)

5    It does not appear that Dr. Leibrand saw Ms. Mersereau on November 4, 2003.  Instead, Dr.

6   Leibrand ordered a chest x-ray to be taken by Sound Mobile Imaging at the jail.  (Defs.' Mot. Ex. M.)

7   Dr. Leibrand did not ask to be notified immediately of the x-ray results and he did not follow up on the

8   findings on November 4, 2003.  Plaintiffs assert that the x-ray films taken on November 4, 2003 were

9   grossly abnormal.  Defendants do not dispute this.

10    On November 5, 2003, Ms. Mersereau saw ARNP Smith in the jail clinic.  Her notes indicate that

11  Ms. Mersereau's difficulty breathing had worsened and that she was still coughing up blood.  She had a

12  hoarse throat with strider, scattered wheezes, and gurgling with respiratory effort.  (*Id.* Ex. N.)  Ms.

13  Mersereau had an "ashen color" to her skin, weakness, and was unable to sit up.  (*Id.*)  She had

14  hemoptysis (blood-stained sputum) with hard coughing.  (*Id.*)  The notes indicated that the x-ray of the

15  previous day showed abnormalities and that after consultation with Dr. Leibrand, Ms. Mersereau was

16  sent to the Skagit Valley Hospital Emergency Room, where her condition deteriorated further.  She died

17  that day.

18  **II.    ANALYSIS**

19      **A.    LEGAL STANDARD**

20    Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions, and

21  provides in relevant part, that "[t]he judgment sought shall be rendered forthwith if the pleadings,

22  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

23  that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as

24  _____

25      [4]  Again, the parties agree that the form was erroneously dated "10-4."

26  ORDER – 5

a matter of law." FED. R. CIV. P. 56(c).  In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party.  *Anderson*, 477 U.S. at 248.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52.  The moving party bears the burden of showing that there is no evidence which supports an element essential to the nonmovant's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the movant has met this burden, the nonmoving party then must show that there is in fact a genuine issue for trial.  *Anderson*, 477 U.S. at 250.

### B.    MOTION TO STRIKE

Defendants object to the Court's consideration of any part of the Declaration of Sarah Gillock submitted in support of Plaintiffs' Opposition because it contains inadmissible hearsay and sheds no light on Dr. Leibrand's state of mind or the claims against him.  The Court has noted the objection and the Court has considered evidence in the Gillock Declaration only for admissible purposes, including Ms. Gillock's own observations and perceptions to the extent that they are relevant to the instant motion.

### C.    FEDERAL CLAIMS

To state a claim under 42 U.S.C. § 1983, Plaintiffs must establish (1) that Ms. Mersereau was "deprived of a right secured by the Constitution or laws of the United States" and (2) that "the alleged deprivation was committed under color of state law."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  It is settled law that physicians providing medical services to inmates, whether as employees of the facility or pursuant to a contract for services, act "under color of state law" for purposes of § 1983.  *West v. Atkins*, 487 U.S. 42 (1988).  No party disputes the fact that Dr. Leibrand is a "state actor" with respect to Ms. Mersereau.  Thus, the Court moves on to discuss the relevant alleged

ORDER – 6

1   deprivation of Ms. Mersereau's federal right.

2       In *Estelle v. Gamble*, 429 U.S. 97 (1976), the United States Supreme Court defined the contours

3   of § 1983 claims alleging constitutional violations arising out of the provision of medical care (or lack

4   thereof) to prisoners.  In *Estelle*, the plaintiff was a state prisoner who sustained a back injury.  He

5   alleged that the medical attention he received for this injury while in a Texas prison amounted to a

6   violation of the Eighth Amendment, made applicable to the States by the Fourteenth Amendment and

7   prohibiting "cruel and unusual punishment."  *Id.* at 99–102.  The *Estelle* Court analyzed governmental

8   obligations to provide medical care to prisoners, concluding that "deliberate indifference to serious

9   medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the

10  Eighth Amendment."  *Id.* at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  The Court

11  explained that its holding did "not mean, however, that every claim by a prisoner that he has not received

12  adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  In § 1983 cases,

13      a complaint that a physician has been negligent in diagnosing or treating a medical
        condition does not state a valid claim of medical mistreatment under the Eighth
14      Amendment.  Medical malpractice does not become a constitutional violation merely
        because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must
15      allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious
        medical needs.  It is only such indifference that can offend "evolving standards of
16      decency" in violation of the Eighth Amendment.

17  *Id.* at 106.

18      The Court elaborated on *Estelle*'s "deliberate indifference" standard in *Farmer v. Brennan*, 511

19  U.S. 825 (1994).  There, the Court held that prison officials "must both be aware of facts from which the

20  inference could be drawn that a substantial risk of serious harm exists," and "must also draw the

21  inference."  *Id.* at 837.  Under the *Farmer* test, "it is enough that the official acted or failed to act despite

22  his knowledge of a substantial risk of serious harm."  *Id.* at 842.  Moreover,

23      Whether a prison official had the requisite knowledge of a substantial risk is a question of
        fact subject to demonstration in the usual ways, including inference from circumstantial
24      evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk
        from the very fact that the risk was obvious.

25

26  ORDER – 7

1   *Id.* (internal citation omitted).

2       While *Estelle* involved a convicted state prisoner entitled to Eighth Amendment protections, the

3   parties agree that in the instant case, Ms. Mersereau was a "pretrial detainee" rather than a "prisoner"

4   because she was not incarcerated pursuant to a conviction.  The difference between pretrial detainees and

5   prisoners was recognized by the Supreme Court in *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

6   Because the State does not have the power to "punish" someone until after it has "'complied with the

7   constitutional guarantees traditionally associated with criminal prosecutions,'" and sentenced that person

8   following a conviction, the Eighth Amendment does not apply to pretrial detainees.  *Id.* (quoting *United*

9   *States v. Lovett*, 328 U.S. 303, 317–18 (1946)).  Instead, the Due Process Clause of the Fourteenth

10  Amendment applies to pretrial detainees such as Ms. Mersereau.  The due process rights afforded a

11  pretrial detainee are "at least as great as the Eighth Amendment protections available to a convicted

12  prisoner." *Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983).  While the Supreme Court

13  has not further elaborated on the distinction between these classes of § 1983 plaintiffs, the Ninth Circuit

14  is among the circuits that applies "the same standards" to pretrial detainees and prisoners because their

15  rights are "comparable." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

16      In the Ninth Circuit, a plaintiff's showing of "deliberate indifference" involves application of a

17  two-part test. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  "First, the plaintiff must show a

18  serious medical need by demonstrating that failure to treat a prisoner's condition could result in further

19  significant injury or the unnecessary and wanton infliction of pain." *Id.* (internal quotations omitted).

20  "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.*

21  The second prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain

22  or possible medical need and (b) harm caused by the indifference." *Id.*  The Ninth Circuit explained in

23  *Jett* that "substantial harm" to the plaintiff provides additional support for the inmate's claim of deliberate

24  indifference, but if such harm is "an isolated exception to the defendant's overall treatment of the prisoner

25  it ordinarily militates against a finding of deliberate indifference." *Id.* (internal quotations and alterations

26  ORDER – 8

1 omitted).

2       The Court finds that Plaintiffs have produced evidence sufficient to withstand summary judgment

3 on the § 1983 claim against Dr. Leibrand.  Plaintiffs' expert Dr. Goldenson's medical opinion[5] with

4 respect to what should have been done in Ms. Mersereau's case (*see* Pls.' Opp'n, Goldenson Decl.),

5 along with the factual recitation *supra*, indicates that there are genuine issues of material fact going to

6 whether Dr. Leibrand's treatment constituted deliberate indifference.  By way of example, but not

7 limitation, such issues include (1) whether it was deliberate indifference for Dr. Leibrand to fail to do

8 allegedly basic tests on Ms. Mersereau, ask her more about coughing up blood, or take her vital signs on

9 November 3, 2003 and (2) whether it was deliberate indifference for Dr. Leibrand to do nothing to follow

10 up on the chest x-ray results from November 4, 2003.  The Court cannot say, as a matter of law, that

11 these or other decisions made by Dr. Leibrand were not made in knowing disregard of the life-threatening

12 nature of Ms. Mersereau's condition.

13       Applying the first prong of the Ninth Circuit "deliberate indifference" test, the Court finds that

14 Plaintiffs have demonstrated that Ms. Mersereau had a "serious medical need," which resulted in her

15 death.  Plaintiffs have further demonstrated that there are triable issues of fact going to causation, as well

16 as the precise effect of Dr. Leibrand's alleged "failure to treat" Ms. Mersereau's clear medical need.  As

17 to the second prong, Plaintiffs have raised material issues of fact going to Dr. Leibrand's state of mind.  It

18 is not required that Plaintiffs produce a statement from Dr. Leibrand that reveals his intent.  Rather, his

19 knowledge of the gravity of Ms. Mersereau's situation may be inferred by circumstantial evidence.

20 *Farmer*, 511 U.S. at 842.  If Plaintiffs prove knowledge, then his actions or *in*actions may be combined

21 therewith to prove deliberate indifference.  These are questions of fact that this Court cannot resolve on

22

23

24       [5] Defendants correctly point out (Defs.' Reply 5–6) that Dr. Goldenson is not qualified to draw legal conclusions, such as that certain conduct by Dr. Leibrand constituted "deliberate indifference." Such legal conclusions are hereby STRICKEN from Dr. Goldenson's Declaration and have not been considered by this Court in ruling on the instant motion.

25

26 ORDER – 9

1   summary judgment.  While, as Defendants emphasize, the "substantial harm" of death that befell Ms.

2   Mersereau is not dispositive as to deliberate indifference, it is probative nevertheless.  *Jett*, 439 F.3d at

3   1096.  Further, Plaintiffs have raised sufficient questions as to whether Ms. Mersereau's death amounts to

4   more than "an isolated exception" to Dr. Leibrand's overall treatment of her.

5         Dr. Leibrand makes much of the fact that many of the cases upon which Plaintiffs rely are

6   distinguishable because they involve extended periods of months or even years, during which significant

7   time passed where no medical treatment was provided or medical personnel exhibited deliberate

8   indifference to medical needs despite often-plentiful requests by inmates for medical attention.  (*See*

9   Defs.' Reply 1–5 (discussing *Jett*, 439 F.3d 1091 (injured thumb treatment spanning a year and a half);

10   *Hartsfield v. Colburn*, 371 F.3d 454 (8th Cir. 2004) (treatment for toothache and loose teeth delayed for

11   several months); *Moore v. Jackson*, 123 F.3d 1082 (8th Cir. 1997) (greater than six-month delay in

12   adequate treatment for tooth infection); *Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994) (hip pain

13   unattended to for over a year)); *see also* Defs.' Mot. 14–15 (discussing *Estelle*, 429 U.S. 97 (back injury

14   treatment delayed for several months).)  The temporal aspect of these cases cannot, however, serve to

15   undercut Plaintiff's claims in the instant case.  Whereas the cited cases involved non-life-threatening

16   structural injuries and dental work, the case now before the Court involves a quick-acting and deadly

17   infection.  Ms. Mersereau was dead within mere *days* of the onset of her symptoms.  In Ms. Mersereau's

18   case, days—and even hours—mattered very much.  In contrast, while their injuries and medical needs

19   certainly required attention, such short periods of time could not have mattered as dramatically to the

20   inmates in the cited cases who had broken thumbs, back injuries, and other non-lethal afflictions.  The

21   fact that Dr. Leibrand could not have stretched his allegedly deliberately indifferent provision of medical

22   care over many months should not now preclude Plaintiffs' § 1983 claim.

23         For the foregoing reasons, Defendants' motion as to Plaintiffs' federal cause of action is

24   DENIED.

25   *//*

26   ORDER – 10

1        ### D.        STATE CLAIMS

2            Plaintiffs' First Amended Complaint (Dkt. No. 27) appears to allege Washington state law claims

3    for medical malpractice, as well as Washington Revised Code section 70.48.130.  Defendants seek to

4    have any claim under section 70.48.130 dismissed as barred as a matter of law based on the argument that

5    actions for injuries resulting from health care are available only under Washington Revised Code section

6    7.70.030.  Defendants further allege that Plaintiffs cannot meet their burden as to any claims for violation

7    of allowable medical malpractice actions in any event.

8            Defendants are only partially correct that "an action for damages for injury occurring as a result of

9    health care is controlled *exclusively* by RCW 7.70.030." (Defs.' Mot. 9.)  Section 7.70.030 is the

10   Washington medical malpractice statute authorizing causes of action if a plaintiff can prove one of the

11   following: (1) injury resulting from "failure of a health care provider to follow the accepted standard of

12   care," (2) that "a health care provider promised the patient or his representative that the injury suffered

13   would not occur," or (3) that "injury resulted from health care to which the patient or his representative

14   did not consent."  WASH. REV. CODE § 7.70.030.  In interpreting this section, the Washington Court of

15   Appeals indeed held in *Branom v. State*, 974 P.2d 335, 338 (Wash. App. 1999), that "whenever an injury

16   occurs as a result of health care, the action for damages for that injury is governed exclusively by RCW

17   7.70" and that "the specific question of whether the injury is actionable is governed by RCW 7.70.030."

18   However, without mentioning *Branom*, the Washington Court of Appeals later held in *Bundrick v.*

19   *Stewart*, 114 P.3d 1204, 1208 (Wash. App. 2005), that section 7.70.030(3) "announces a general cause

20   of action for absence of consent," but that it does *not* "eliminate claims for injuries arising from health

21   care to which the patient gave *no* consent."  The *Bundrick* court held that the common law cause of

22   action for medical battery was not eliminated by section 7.70.030, explaining that an "action for total lack

23   of consent sounds in battery, while a claim for lack of informed consent is a medical malpractice action

24   sounding in negligence."  *Id.*

25   //

26   ORDER – 11

1   As to whether Plaintiffs can sue pursuant to section 70.48.130, the Court finds that Defendants

2   are correct in their conclusion, but not in their reasoning. Instead, the Court finds that section 70.48.130

3   is a legislative provision for and policy statement in support of medical care for inmates in the State of

4   Washington. It sets guidelines for financing inmate medical care and seeks to ensure both that necessary

5   medical services are provided and that the costs of such services are covered. The statute does not,

6   however, provide a private right of action. Nor has this Court located any Washington case law

7   indicating that a private right of action is implicit in this statute. Moreover, Plaintiffs do not respond to

8   Defendants' motion to dismiss any claim under section 70.48.130. Accordingly, Plaintiffs' claim under

9   section 70.48.130 is DISMISSED with prejudice.

10   With the medical malpractice and medical battery claim structure described *supra* in mind, the

11   Court finds for the following reasons that Defendants' motion to dismiss Plaintiffs' remaining statutory

12   claims for medical malpractice (and common law claim for medical battery, to the extent Plaintiffs seek to

13   make such a claim) must be denied.

14   Defendants' original motion argued that Plaintiffs' state law claims must be dismissed because

15   Plaintiffs had failed to produce any expert testimony in support of their medical malpractice claims.

16   (Defs.' Mot. 9–13.) After Plaintiffs responded with expert testimony (and noted that Defendants had not

17   deposed Dr. Goldenson even though he was disclosed early on in this litigation), Defendants conceded

18   that Dr. Goldenson's Declaration "presents sufficient evidence to sustain a claim that Dr. Leibrand

19   violated the standard of care." (Defs.' Reply 7.) Nevertheless, Defendants argue, Plaintiffs have failed to

20   present sufficient evidence going to proximate cause, and their state law claims should be dismissed on

21   that basis. Defendants are correct that Plaintiffs must present expert testimony going to causation, but

22   the Court disagrees with Defendants' assertion that Plaintiffs have failed to meet this burden. Causation

23   is a question of fact that depends on expert testimony. Plaintiffs have presented an expert who has clearly

24   stated that his opinion is that Ms. Mersereau would have had an increased opportunity to survive if Dr.

25   Leibrand had met his duty of care. Contrary to Defendants' characterization, Dr. Goldenson's

26   ORDER – 12

1    Declaration does discuss specific actions that he believes would have prevented Ms. Mersereau's death or

2    increased her chances of survival, such as diagnostic testing to discover the extent of her condition earlier

3    and emergency room care at an earlier stage.  Dr. Goldenson also suggested a general standard of care

4    relevant to causation: quicker and more vigilant medical care was required due to the seriousness of Ms.

5    Mersereau's condition.  Dr. Goldenson's opinion is based on facts, and therefore is sufficient.  *U.S. v.*

6    *Various Slot Machines on Guam*, 658 F.2d 697, 700 (9th Cir. 1981).

7            For the foregoing reasons, the Court finds that Plaintiffs' statutory medical malpractice claims

8    related to Dr. Leibrand's breach of the relevant standard of care and informed consent cannot be

9    dismissed as a matter of law.  Accordingly, Defendants' motion as to these claims is DENIED.  Nor can

10   any common law medical battery claim that Plaintiffs intend to bring be dismissed as a matter of law.

11   Defendants did not move for dismissal of such a claim where their consent argument was couched in

12   terms of the medical malpractice statute, not the intentional tort.[6]

13           Finally, the Court declines to dismiss either "wrongful death" or "loss of chance of survival"

14   claims as requested by Defendants (Defs.' Reply 8–10).  These are simply alternative theories that depend

15   on a factual determination about whether Ms. Mersereau's chance of survival was above or below fifty

16   percent.  *See Herskovitis v. Group Health Co-op. of Puget Sound*, 664 P.2d 474 (Wash. 1983).  Because

17   there are material issues of fact going to causation and because Ms. Mersereau's precise chances of

18   survival are a matter for expert opinion and the factfinder, it is inappropriate to foreclose one theory or

19   the other on summary judgment.

20   *//*

21

22   _____

23           [6]  The Court expresses no opinion about whether a claim for medical battery would be cognizable
     on these facts because the issue has not been raised by any party.  The Court mentions the claim because
24   (1) Defendants briefed dismissal of "consent" claims, as well as statutory preclusion of common law
     claims, and (2) medical battery is a consent-based claim that is not precluded by the medical malpractice
25   statute.  Further, the Washington State Law Claims section of Plaintiffs' First Amended Complaint could
     be read to include intentional torts as well as negligence.

26   ORDER – 13

**III.    CONCLUSION**

For the reasons set forth in this Order, the Court GRANTS in part and DENIES in part Defendants Howard Leibrand, M.D.'s and Marilyn Leibrand's Motion for Summary Judgment.  Plaintiffs' claim under Washington Revised Code section 70.48.130 is DISMISSED with prejudice and Defendants' motion is GRANTED as to that claim only.  As to all other claims, state and federal, Defendants' motion is DENIED.

SO ORDERED this 24th day of August, 2006.

John C. Coughenour
United States District Judge

ORDER – 14